Good morning, your honors. May it please the court. My name is Britta Stamps and I'm a law student from the University of Arkansas, here on behalf of the appellant, Duane Belanus. And could you please introduce the supervising attorney who's here? Yes, your honor. Dustin Buehler, supervising attorney from the University of Arkansas School of Law. Thank you. I'll watch the clock, but I would like to reserve three minutes of rebuttal for my co-counsel, Kristoff Keller, also a law student from the University of Arkansas. All right. We ask this court to reverse and remand for two reasons. First, the district court erred by dismissing Mr. Belanus' complaint with prejudice and without leave to amend. Second, it erred by assessing a strike against Mr. Belanus under Section 1915G of the Prison Litigation Reform Act, even though he was proceeding in form of hopperis. I'll address each of these issues in turn. Turning to my first point, this court made clear in Octar v. Mesa that dismissal with prejudice is proper only if it is absolutely clear that amendment would be futile. That is not the case here, and each of the three reasons that the district court dismissed were in error. First, it is not absolutely clear that the statute of limitations bars Mr. Belanus' claims. Why not? Your Honor, the district court did not even consider equitable tolling in this instance, which we believe the district court must assess in the first instance on remand. He spent What would be the basis for equitable tolling? Your Honor, Mr. Belanus was very diligent in searching for these search warrants and putting in requests to his attorney and then also to the prosecutor and even to the district court, with the district court even writing a letter to the prosecutor requesting that he produce the search warrants. But he was aware that there were no search warrants at the time the search was conducted, wasn't he? No, Your Honor. In fact, at trial, the police officers even testified that they did have warrants for the searches, although the warrants were never produced. Right, but he was aware that they were not produced. He was aware of that, Your Honor, yes. Right, so why would there be an extraordinary circumstance that would permit him to avoid the statute of limitations if he was aware of the infirmity that he is now asserting? Your Honor, while he was aware that the searches did occur, he could not tell for certain whether there were warrants or not. And as you can see from the excerpts of record, he was diligent in trying to determine before he filed a claim whether the search warrant was produced. Well, but did the government seek to introduce evidence from the searches of the house? But that was part of his trial. That was part of his whole criminal process, right? The excerpts of record that we have in this case, in the complaint, do not detail exactly what warrants may or may not have been introduced. No, not what warrants. They searched, and they found certain things, and that was part of his prosecution. So he knew that they used things from the search of his resident to convict him. Yes, Your Honor, he did. So he's on notice. He did have notice that those searches occurred, Your Honor. He did. However, the equitable tolling should apply in this case because of the extraordinary circumstances, as in Montana case law in Shute v. Nesbitt, where they concealed the fact that there were no warrants by refusing to answer any of his requests as to whether or not a warrant existed. Another basis for the dismissal below is Heck v. Humphrey, which does not bar Mr. Boulanus's claim in this case. His underlying Section 1983 claim, it's successful, does not necessarily imply the invalidity of his conviction. Importantly, the state does not dispute the fact that the district court erred on this issue. On its final basis for dismissal, the district court erred when it determined that prosecutorial immunity applied to two defendants because it is not absolutely clear that Mr. Boulanus could not plead further facts on that issue. What additional facts would he be able to plead that would be consistent with his complaint as it was previously filed? Your Honor, for example, we know of at least one affidavit submitted by the prosecutor, Leo Gallagher, in the case where he acted as a complaining witness rather than as a prosecuting attorney entitled to any immunity. Turning to my second point, the Section 1915g strike issue, despite the fact that Mr. Boulanus paid the filing fee up front, the district court nonetheless assessed a strike against him under Section 1915g, the inform-a-papyrus statute. But what, is there any case authority supporting your contention that for a dismissal to count as a strike pursuant to 18 U.S.C. 1915g, the action must have been filed inform-a-papyrus? Your Honor, while we do not have case law that it must have been filed inform-a-papyrus, there is also no support from this court, or no binding authority on this court that says the opposite, that says that it applies to both fee paid and IFP litigants. What's the gist of that, that we don't want people filing frivolous lawsuits, and how much is the filing fee, like $355 or $450, I don't know, something along those lines? So what if someone has money and they just keep paying it but they keep filing frivolous lawsuits, should they be shielded, if you're really looking to what the policy is? We don't want people filing frivolous lawsuits. Yes, Your Honor, we do not want prisoners filing frivolous lawsuits. However, even the three strikes provision of Section 1915g would not bar that person from filing frivolous lawsuits. They would simply be barred from filing it inform-a-papyrus after the three strikes. If fee paid litigants were subject to the same Section 1915g strikes as inform-a-papyrus litigants, prisoners would have no incentive to pay the filing fees up front until they have already received three strikes, thus increasing the overall amount of inform-a-papyrus litigation in federal courts, contradictory to Congress's stated purpose when they passed the Prison Litigation Reform Act. Counsel, are you aware that at least four circuits have determined that strikes can be assessed regardless of whether the petitioner is proceeding, the prisoner has prepaid the fee? What do you think we should do about those cases? Should we ignore them? Your Honor, I am aware that four other circuits have done that. However, three of the circuits, it's merely dicta or a one-line approach to it. It's not an in-depth analysis of this strike issue. So you want us to create a circuit split? Your Honor, we do believe that the Third Circuit, which went in-depth into these issues, simply the opinion simply misconstrues Congress's intent, and we do believe that our interpretation is correct and that a circuit split would be appropriate in this case because Congress's intent to limit IFP litigation is simply not upheld when a prisoner such as Mr. Boulanos, who has worked hard to pay his filing fee up front and pay $350 up front, is assessed a strike the same as someone who applied as an inform-a-papyrus litigant. But IFP prisoners still pay the fee, it's just that it's deducted over time. Correct, Your Honor, and to that, we would point out that that's simply the pay-now-versus-pay-later mentality that you or I would have with any large purchases that we would make, and that while $350 may not seem like a lot of money to you or I, it is a lot to a prisoner such as Mr. Boulanos, who makes less than a dollar an hour when he works in the prison. So an inform-a-papyrus litigant may never pay that full filing fee up front. Unless there are further questions, I would like to reserve the rest of my time for rebuttal. All right. Thank you, Counsel. Thank you. May it please the Court. My name is Rebecca French. I'm a Special Assistant Attorney General for the State of Montana. I appear today not on behalf of any of the defendants who have never been served with a complaint in this case, but at the Court's request as a friend of the Court. I'd like to address the issues raised by the counsel for Mr. Boulanos in this case. I always like to start with what I agree with, and I absolutely agree that Heck v. Humphrey does not bar Mr. Boulanos' illegal search claims, primarily because Heck v. Humphrey only applies if, by declaring those searches to have been illegal, this Court would be in a position of setting aside the conviction of Mr. Boulanos without either that happening either in the State of Montana in a court or in a habeas proceeding. And frankly, I'm quite confident that Mr. Boulanos would have been convicted without any of these searches. I think the evidence against him primarily consisted of his own testimony as well as the testimony of his victim. So that certainly is not an area where I disagree with counsel for Mr. Boulanos. It's interesting to me that both Mr. Boulanos and the State of Montana cited the same case, Trimble v. County of Santa Rosa, on the issue of why it was proper, or in their case they thought it was improper, for the District Court to actually dismiss Mr. Boulanos' case on prescreening with prejudice. And it's true that one of the issues in Trimble was whether the District Court below was correct in dismissing an illegal search claim based on Heck v. Humphrey. And this Court rightly found that it should have dismissed that without prejudice because I believe at that point the inmate's proceeding was still going through the court on a post-conviction release proceeding in State court. And the notion was that the dismissal on the Heck issue should have been without prejudice because there still could be a chance that that conviction would be set aside. But the Court rightly looked to the statute of limitations because the statute of limitations on an illegal search claim occurs when the search occurs. Well, is there any published court decision in the Ninth Circuit holding that the claim for a warrantless search occurs when a person learns of the search and not when he learns that the search was warrantless? You know, Your Honor, I believe that the District Court cited McAnus. I'm sorry, I might have the name wrong, but the District Court did cite a case talking about the fact that that search occurs. He also cited a case, Kuhn, I believe it is, out of the District Court for the District of California. And I guess I don't really think that there's a lot of dispute here about that issue. The dispute that Mr. Balanus has raised is this issue of whether equitable estoppel should apply. Equitable tolling. Equitable tolling. Thank you, Your Honor. And I think what I find particularly confusing about this is from the perspective of Mr. Balanus, never dismiss on prescreening with prejudice based on the statute of limitations because there might be some facts out there that a plaintiff could raise if allowed to amend and raise equitable tolling. But the more important consideration really is that I think that Mr. Balanus had the opportunity to make these arguments. Mr. Balanus has more of a record than you would normally expect to see in a case where the District Court made its decision based primarily on the complaint because he chose to attach to his complaint a number of documents, excerpts of records from his trial, letters he had written to the court, and he was relying on all of these and continues to rely on these documents to argue that somehow the one or more of the defendants, I think it's important to recognize that this is a Section 1983 claim, so he has to allege specific facts against each of the defendants. So I don't think that this equitable tolling should apply unless he could actually identify which of these defendants concealed the fact that there was no warrant, which seems to be his argument as to the August 3rd search. In terms of the prosecutors, I think I heard opposing counsel say that the complaint could be amended to show that at least one of the prosecutors signed the search warrant. What's your response to that assertion? Well, you know, I didn't actually hear that. What I heard was that one of the prosecutors had signed an affidavit. Affidavit, that's correct. And, of course, I haven't seen this affidavit that was supposedly signed. It's not in the record. What I can explain to you that may not be information known to the attorneys for Mr. Balanus is that it is common, because Montana, although it has a grand jury system, it does not usually impanel a grand jury. As a matter of fact, I think it's only done so once or twice in history. Prosecutors commonly prepare for the court a motion for leave to file an information when they charge someone with a felony offense. And as part of that motion for leave to file, certainly the prosecutor can, I think they usually do an application and it's not sworn, but, you know, if there is a sworn application out there or a sworn affidavit, what I would say is that in my experience, all of the prosecutor is swearing to is that he's received this information from the investigating officers. He's not actually vouching for the truth of any of that information. Well, I guess, though, is that the district court's, you know, why wasn't the district court's dismissal on that possibly premature? Is, could Belanus make factual allegations concerning the prosecutor's action that would not be subject to absolute immunity, that they weren't? Certainly he could. I don't, I don't think that they're out there. But you haven't seen a proffer? Right. But more importantly, I mean, the district court chose to dismiss on three separate grounds. The dismissal as to the prosecutors was based solely on prosecutorial immunity. But because this complaint was based only on the illegal searches, not the actual prosecution, then if those, if, if a claim based on the illegal searches was barred by the statute of limitations, then so too would a claim based on anything that the prosecutor did to swear out an affidavit in support of those searches or whatever it is he's claimed to have done. That would also be barred by the statute of limitations. Now, and I guess just to go back to this idea of equitable tolling, I, the, the fact that they claim was concealed was the fact that there was no warrant. And I, I think your honors had a number of questions about that, and I completely agree. The nonexistence of something is not something that can be concealed. And truthfully, if Mr. Belanus was actually waiting to find out for sure that there was no warrant, then he'd still be waiting. Because his only basis for stating that fact is the, is because it hasn't been turned over to him, or at least it wasn't until October when the district court actually made it part of the record in, in his post-conviction release proceeding. I want to touch just briefly on the issue of the strikes, and it has to be brief because I'm, I'm running out of time here. Because I really am here as a friend of the court, I did feel it was incumbent upon me to point out to the court that you don't actually need to reach this issue, whatever you do in this case, because there is Ninth Circuit authority that says that the decision about whether there's a strike really is made by the, the court that imposes that strike. However, I certainly don't want to discourage this, this court from deciding this issue, because I do think it's an important issue. It's important for the district court judges in the, in the, all of the districts in the Ninth Circuit. It's important for people in Mr. Belanus's position, so they know exactly what's going to happen when they choose to come up with that $350 and pay to file. And certainly, it's important to potential defendants who can raise this as a defense. I believe and have argued that the plain language of the statute itself is sufficient. The court need not look to legislative history, but if the court is to look to the context of the, is it, it's 28 U.S.C. Section 1915, which is the Inform-a-Papyrus statute, I think the court should also look to the screening statute, 28 U.S.C. Section 1915a, because that statute is triggered any time a prisoner files a case against a governmental entity or an employee of the governmental entity, and I think that really does show that Congress was concerned about all frivolous lawsuits filed by prisoners against states and their employees. All right. Thank you, counsel. We will hear rebuttal. Good morning, Your Honors. Good morning. Christophe Keller on behalf of the appellant, Mr. Duane Belanus. Two brief points on rebuttal. The first has to do with this equitable tolling issue, and before going into any of the specifics of that issue, I'd like to point that we're simply arguing that dismissal with prejudice and without leave to amend at that point was unjustified because the standard in this court is that it must be absolutely clear that amendment would be futile. It's a low standard. We're not asking this court for much, and so in pointing the court to Mr. Belanus' repeated attempt to try and get these search warrants, which he believes simply do not exist, and as this court must assume don't exist for the purposes of this appeal, it shows that equitable tolling might be an issue in this case. Well, but when you're searched, you know you're searched, so it's like if we don't use that a bright line for that's when people are put on notice, then it just opens a whole Pandora's box. I mean, if it were a situation that he didn't know he'd been searched, that would be a different situation. He just doesn't know what theories he would maintain on that, so I think the rule that you're proposing is one that could make this go on forever. Well, Judge Callahan, respectfully, I don't think that we are asking you to create an unclear standard on that specific issue in finding that dismissal of this specific case was unjustified. It's unclear from the record whether he knew that there was a search warrant or whether he could have known that perhaps a... But it's when are you on notice of the illegality of your search? I mean, otherwise it would open the doors as to any other... Well, I didn't know that they actually searched the bathroom, and so I just found that out, so now I can file it. Well, as your Honor is well aware, there are exceptions to the warrant requirement as well, and so even if he was on notice that it was a warrantless search, he didn't necessarily know that it wasn't a legal search. So then you're claiming that that makes it worse, because you're claiming that he didn't know that it was warrantless, but now you're saying, well, even if he knew it was warrantless, he didn't know it was illegal. Well, I think that this is a side issue, Your Honor, for the purposes of this specific appeal, because again, all we're asking this Court to rule is whether equitable tolling could have potentially been an issue in this case, whether it was absolutely clear that equitable tolling wasn't a potential issue, and this issue should be decided by the District Court in the first instance. I think that... And whether Mr. Bellin is successful on that or not is beside the point for the purposes of this appeal. I've used up my time. I'm happy to answer any other questions.  Thank you, ma'am. Thank you to both counsel. On behalf of the Court, we would like to convey our gratitude to the University of Arkansas students and supervising attorney for accepting this case pro bono. The case is argued and submitted for decision by the Court.
judges: Fernandez, Rawlinson, Callahan